# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

KENNETH J. THOMAS,

     Petitioner,

     v.                                       **Case No. 21-CV-942-SCD**

LARRY FUCHS,

     Respondent**.**

## DECISION AND ORDER

Kenneth J. Thomas challenges his 2016 Wisconsin convictions for robbing a convenience store and murdering a gas station clerk. Thomas confessed, testified against one of his co-actors, pled guilty to both crimes, and received a sixty-five-year sentence. During Thomas' direct appeal—and while serving his own lengthy prison sentence—Thomas' older brother came forward saying he was the one who committed the robbery and the shooting. The Wisconsin state courts declined to remand the matter to allow Thomas' appellate lawyer to further investigate the brother's claim; the courts also denied Thomas' appeal.

Thomas subsequently sought additional relief in state court, alleging that his appellate lawyer erred in handling the newly discovered evidence and that he should be allowed to withdraw his pleas because he is innocent. While still pursuing those actions, Thomas filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which he raises the same two claims alleged in state court. Larry Fuchs, the warden of Columbia Correctional Institution (where Thomas is confined), moved to dismiss the federal petition for failure to exhaust state remedies. After Thomas voluntarily dismissed his state-court actions because he

thought federal court would be a more favorable forum, Fuchs filed a brief arguing that Thomas' deliberate default also warranted dismissal of his petition. Thomas requests that I review the merits of his federal habeas claims, arguing that his showing of innocence excuses any default.

Thomas is not entitled to relief under § 2254. He has not exhausted available state remedies as to any of his federal claims, and his attempt to invoke the narrow actual-innocence exception to disregard that default is not persuasive. Accordingly, I will grant Fuchs' motion, deny Thomas' petition, and dismiss this action.

## BACKGROUND

At approximately 10:40 p.m. on January 13, 2015, a masked man robbed a Waukesha gas station and shot and killed the store clerk. *See* ECF Nos. 28-2, 28-3; *see also State v. Malone*, No. 2017AP680-CR, 2018 WL 4656878, 2018 Wisc. App. LEXIS 789 (Wis. Ct. App. Sept. 26, 2018). Some evidence pointed to Kenneth J. Thomas as the shooter, and he eventually confessed to the crimes. *See* ECF No. 28-3 at 83–106. After initially charging Thomas with armed robbery and first-degree intentional homicide (as well as several other offenses he allegedly committed that same month), the State of Wisconsin offered to amend the homicide charge to felony murder and recommend a forty-year sentence if Thomas pled guilty and testified truthfully against one of his co-actors, Darrin Malone. *See* ECF No. 24-1 at 5, 26; *see also* ECF No. 28-3 at 81–82, 98–100. Thomas took the deal.

Thomas testified for the State at Malone's trial and explained in detail the events leading up to, during, and after the robbery and shooting. *See* ECF No. 28-3 at 34–126. Thomas told the jury that on the night of January 13, he and Malone planned the robbery at Thomas' apartment in West Allis. Several others were present during the planning session,

2

including Thomas's brothers, Deyontae and Lavontae Stinson (who lived at the apartment too). Thomas indicated that Malone's girlfriend, Jerica Cotton, drove him and Malone to the robbery. He stated that Cotton waited in the car while he and Malone entered the gas station wearing green masks over their faces and gloves on their hands; Thomas also had a Hi-Point 9-millimeter gun. Thomas told the jury that he walked in the store first (with Malone behind him), shot the clerk during a tussle, grabbed some money, and ran out of the store to Cotton's car. The three then drove back to Thomas's apartment. Along the way, Thomas threw his coat out the window, and Cotton later got rid of the masks, gloves, and hats Thomas and Malone wore during the robbery. Thomas indicated that back at the apartment, they celebrated the robbery by getting high and drunk. Also, Lavontae hid the 9-millimeter gun inside his son's diaper box. Thomas also testified that he, Malone, and Cotton had robbed a convenience store in similar fashion on January 10, 2015.[1]

After testifying at Malone's trial, Thomas pled guilty to the January 10 armed robbery and the amended charge of felony murder. *See* ECF No. 24-1 at 1, 5, 17–18; ECF No. 28-2. The circuit court sentenced Thomas to a total of forty-five years of initial confinement and twenty years of extended supervision. ECF No. 24-1 at 2, 4, 15–16. Thomas subsequently moved to withdraw his guilty pleas, alleging that his learning disability and errors made by his trial lawyer rendered his pleas invalid. *See* ECF No. 24-2 at 16, 21. The circuit court denied the motion following an evidentiary hearing. *See id.* at 21. Thomas appealed, arguing that the judge who presided over the evidentiary hearing was biased in favor of Thomas' trial lawyer. *See id.* at 21–22.

---

[1] Cotton testified at Malone's trial too, and her testimony appears to have been generally consistent with Thomas' testimony: she acted as the getaway driver while Thomas and Malone robbed the convenience store and the gas station. *See Malone*, 2018 Wisc. App. LEXIS 789, at *11–13.

3

After the parties submitted their appellate briefs, but before the Wisconsin Court of Appeals issued its decision, Thomas' appellate lawyer obtained new information suggesting that Thomas may not have committed the robberies or the shooting. *See* ECF No. 24-2 at 3–18. He filed a motion to withdraw the appellate briefs and remand the matter to the circuit court for further evidentiary hearings. *See* ECF No. 24-2 at 3–8. The motion contained the following assertions. After briefs were submitted, Thomas told his appellate lawyer that his brother Deyontae had information relevant to the appeal. Thereafter, on or about May 5, 2018, the lawyer received an affidavit from Deyontae claiming that he was the one who committed the January 13, 2015 robbery and shooting, that Thomas was not involved, and that Thomas confessed to save Deyontae from going back to prison. During a subsequent meeting, Deyontae reiterated that Thomas was not involved in those crimes. On or about May 25, 2018, the lawyer received another affidavit from Deyontae, this one claiming that Thomas did not commit the January 10, 2015 armed robbery either; Deyontae did. Thomas' appellate lawyer further asserted that, after Thomas' conviction, he received a DNA evidence report that could potentially be exculpatory considering Deyontae's recent disclosure. It appears the lawyer attached copies of the two affidavits to the motion.

The Wisconsin Court of Appeals denied the motion in a one-page order, finding that good cause did not exist for the relief requested. *See* ECF No. 24-2 at 19. The court also denied Thomas' appeal, *see* ECF No. 24-2 at 20–28, and on February 12, 2019, the Wisconsin Supreme Court denied Thomas' petition for review, *see* ECF No. 24-2 at 29. Thomas did not file a petition for certiorari in the United States Supreme Court. *See* ECF No. 24-2 at 31.

More than a year later, Thomas sought additional relief in state court. *See* ECF No. 24-1 at 6–8. He first filed a state petition for a writ of habeas corpus, alleging ineffective

assistance of appellate counsel for failing to discover evidence of his innocence. *See* ECF No. 24 at 3; ECF No. 24-1 at 8; ECF No. 24-5. While that state petition was pending, Thomas also filed a collateral attack pursuant to section 974.06 of the Wisconsin Statutes, seeking to withdraw his pleas because he is innocent of the crimes for which he was convicted. *See* ECF No. 24-6; ECF No. 24-1 at 7. Thomas alleged in support of the motion that he was coerced into confessing to crimes he didn't commit; his DNA was not found on the clothes, mask, or gun used during the robbery (but Lavontae's was); his girlfriend at the time of the shooting, Sadawndra Gasper, had video evidence on her phone proving that Thomas couldn't have committed the January 13 robbery and shooting; and several witnesses had come forward with information showing that Thomas wasn't involved in that incident. Thomas subsequently filed a supplement to the motion. *See* ECF No. 24-7. Following a status conference, the circuit court took the motion under advisement. *See* ECF No. 24-1 at 7.

Before the Wisconsin state courts resolved either action, Thomas filed a habeas petition in this court, alleging two potential grounds for relief. *See* ECF No. 1; *see also* ECF Nos. 2, 2-1. First, he claims that his appellate lawyer rendered ineffective assistance of counsel with respect to Thomas' direct appeal and the newly discovered evidence allegedly showing Thomas' innocence. ECF No. 1 at 1–3. Second, he claims that the state courts' handling of his actual-innocence claim has violated his rights to due process. *See id* at 4. Thomas asks the federal district court to vacate his conviction and sentence, or, in the alternative, to order a new trial. *Id.* at 5.

The clerk of court randomly assigned the matter to me, and I promptly examined the petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. *See* ECF No. 11. In the screening order, I noted that Thomas had not

5

exhausted his state-court remedies on either federal habeas claim and that it was unclear whether the petition was timely. *Id.* at 3. However, because Thomas appeared to raise a colorable claim of actual innocence that could excuse those procedural issues, I ordered Fuchs to respond to the petition. *Id.* at 3–4.

In lieu of filing an answer—and consistent with my Rule 4 order—on November 2, 2021, Fuchs timely filed a motion to dismiss Thomas' petition. *See* ECF No. 17. Fuchs argued that the petition must be dismissed because Thomas was still attempting to exhaust his federal claims in state court. In an apparent attempt to stave off dismissal of his petition for failure to exhaust, on November 5, 2021, Thomas voluntarily dismissed his state petition raising the ineffective-assistance-of-appellate-counsel claim. *See* ECF No. 24-5 at 1. A few days later, Thomas moved to voluntarily dismiss his section 974.06 motion. *See* ECF No. 24-1 at 6. Thomas told the state-court judge that he preferred to be in federal court because he felt he wasn't getting a fair shake in state court. *See* ECF No. 28-1. The circuit court granted the motion for voluntary dismissal on November 24, 2021. *See* ECF No. 24-1 at 6; ECF No. 28-1 at 4.

Back in federal court, Fuchs filed a reply in support of his motion to dismiss. *See* ECF No. 28. Thomas has filed several motions himself, including a motion requesting a preliminary injunction, ECF No. 8; a motion to enforce a judgment for specific act, ECF No. 9; two motions requesting an evidentiary hearing, ECF Nos. 13, 29; a motion for release pending a decision on his petition, ECF No. 16; a motion for judgment on the pleadings, ECF No. 23; a motion for judgment as a matter of law, ECF No. 27; and a motion for default judgment, ECF No. 32. Thomas has filed other documents as well, including a response to Fuchs' motion to dismiss, ECF No. 21, and a brief in support of his petition, ECF No. 18.

Both Thomas and Fuchs have consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 15.

## ANALYSIS

Fuchs argued in his initial brief that Thomas' habeas petition should be dismissed because at that time Thomas was actively pursuing his two federal habeas claims in state court. In his reply brief, Fuchs argues that Thomas deliberately defaulted his federal habeas claims when he voluntarily dismissed his pending state-court actions. Thomas concedes that he deliberately defaulted his ineffective-assistance-of-appellate-counsel claim but maintains that he presented his actual-innocence claim to the Wisconsin courts during his direct appeal. Thomas maintains that I should review the merits of both federal claims—whether defaulted or not—because his showing of innocence sufficiently excuses any default.

## I. Thomas Procedurally Defaulted His Federal Habeas Claims

The United States Supreme Court "has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (citing *Ex parte Royall*, 117 U.S. 241 (1886)); *see also* 28 U.S.C. § 2254(b) (codifying the rule). Nevertheless, in *Fay v. Noia*, 372 U.S. 391 (1963), the Court held that a failure to appeal at all in state court "does not bar federal habeas review unless the petitioner has deliberately bypassed state procedures by intentionally forgoing an opportunity for state review." *Coleman*, 501 U.S. at 744–45 (citing *Fay*, 372 U.S. at 438–39). Later Supreme Court cases, however, eroded *Fay*'s reach, *see Coleman*, 501 U.S. at 745–50 (discussing cases), leading one district court to declare "that the deliberate bypass standard of *Fay v. Noia* is dead," *United States ex rel. Free v. McGinnis*, 818 F. Supp. 1098, 1114 (N.D. Ill. 1992).

7

In our case, I don't need to decide whether to breathe new life into the deliberate-bypass standard because Thomas clearly has not exhausted state-court remedies with respect to his two federal habeas claims. "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (quoting *Duncan*, 513 U.S. at 365–66). During his direct appeal in state court, Thomas did not fairly present either of the two claims he alleges here: (1) that his appellate lawyer provided ineffective assistance of counsel and (2) that the state courts violated his rights to due process. *See* ECF No. 24-2 at 20–28, 30. He did raise those two claims later—in a state petition for a writ of habeas corpus and a state collateral attack—but it is undisputed that Thomas willfully abandoned those claims because he thought federal court would be a more friendly forum. *See* ECF Nos. 24-1, 24-5, 24-6, 24-7, 28-1. Thomas therefore did not give the Wisconsin state courts the first chance to remedy the alleged constitutional violations raised in his federal habeas petition.

Thomas insists that he did claim his innocence during his direct appeal, but that fact, even if true, does not change this analysis. "The Supreme Court has not recognized a petitioner's right to habeas relief based on a stand-alone claim of actual innocence. To win federal relief, a petitioner must show an independent constitutional violation." *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 391–94

(2013)). Thus, assuming Thomas did fairly present an actual-innocence claim in state court, that conduct does not satisfy the exhaustion requirement for his ineffective-assistance-of-counsel and due-process claims. Thomas procedurally defaulted those claims. *See Hicks v. Hepp*, 871 F.3d 513, 531 (7th Cir. 2017) ("The failure to exhaust a claim or set of claims, results in procedural default, and we will not consider a procedurally defaulted claim on the merits.") (citations omitted).

## II.    Thomas' Claim of Actual Innocence Does Not Excuse His Default

"Where a [state prisoner] has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the [prisoner] can first demonstrate either cause and actual prejudice . . . or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations and internal quotation marks omitted). Thomas has not attempted to demonstrate cause for his failure to raise his federal habeas claims in state court and actual prejudice as a result of the alleged constitutional violations. Nor could he. The only "cause" of the default was Thomas' deliberate dismissal of his state-court actions, and that is not a factor external to his defense. *See Coleman*, 501 U.S. at 753 ("'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him."). Instead, Thomas claims he is actually innocent of the crimes of conviction.

"[W]hen a petitioner accompanies his persuasive showing of actual innocence with a different claim for relief[,] . . . actual innocence may be used as a 'gateway' to excuse procedural defaults that would otherwise bar a federal court from reaching the merits of the underlying claims." *Gladney*, 799 F.3d at 895 (citing *McQuiggin*, 569 U.S. at 391–93). "The actual innocence gateway is narrow." *Gladney*, 799 F.3d at 896. "[Thomas] must show that

9

'in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)). "Such new evidence can take the form of any 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Gladney*, 799 F.3d at 896 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). I must "then consider[] the total record—'all the evidence, old and new, incriminatory and exculpatory'—and make[] 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Gladney*, 799 F.3d at 896 (quoting *House*, 547 U.S. at 538).

Thomas points to three pieces of "new" evidence that he thinks satisfy the actual-innocence standard. First, along with his petition, Thomas submitted affidavits from himself and others claiming that Thomas didn't commit the armed robberies or the shooting. Second, Thomas alleges that his DNA was not found on any of the items used during the robberies or the shooting. Third, Thomas asserts that his girlfriend at the time, Sadawndra Gasper, had videos on her phone showing that Thomas was elsewhere at the time of the January 13, 2015 robbery and shooting.

### A. Affidavits

Thomas submitted his own affidavit claiming that his brother Deyontae committed the crimes Thomas confessed to. That affidavit, which is dated May 2020, contains the following allegations. *See* ECF No. 2-1 at 2–3. At the time of the January 13, 2015 robbery and shooting, Thomas was with his girlfriend (Gasper) at her home in Waukesha County. Around midnight, Thomas' younger brother (Lavontae) called and told him that their older brother (Deyontae) had just committed a robbery in Waukesha. Gasper and her mom then took Thomas back to his apartment in West Allis, and Deyontae told him everything that happened. Thomas asserts

10

that he told the police he committed the robbery and shooting to spare Deyontae from having to go to prison. Gasper, Deyontae, and Lavontae also submitted affidavits that are generally consistent with Thomas' affidavit. *See* ECF No. 2-1 at 4–11. Deyontae claims in one affidavit that Thomas didn't commit the January 10, 2015 robbery either; he did.

The affidavits do not constitute reliable evidence of Thomas' innocence for several reasons. *First*, Thomas' prior conduct diminishes the probative force of the affidavits. Thomas confessed to the armed robberies and the shooting, and he admits in his affidavit that he "knew details only the suspect would have known." ECF No. 2-1 at 2. Thomas also pled guilty to armed robbery and felony murder and acknowledged at the plea hearing that he committed the crimes; he entered the pleas freely, voluntarily, and intelligently; and he talked with his lawyer about potential mitigating evidence. *See* ECF No. 28-2. And, perhaps most importantly, Thomas testified under oath at the trial of one of his co-actors, Darrin Malone. *See* ECF No. 28-3 at 34–126. There, Thomas explained in detail how he, Malone, and Malone's girlfriend (Jerica Cotton) planned the January 13, 2015 robbery at Thomas' apartment in West Allis; Cotton drove them to Waukesha County to commit the robbery; he entered the gas station first (with Malone behind him) wearing a green mask over his face and gloves on his hands; he shot the store clerk during a tussle, grabbed some money, and ran out the store to Cotton's car; he ditched his coat along the way back to his apartment, and Cotton later discarded other evidence; and back at the apartment he got drunk and high with the rest of his family, including Deyontae and Lavontae. Thomas also described in detail the other armed robbery he committed with Malone and Cotton on January 10, 2015. All this testimony would be admissible at Thomas' hypothetical trial as a prior inconsistent statement and a party admission. *See* Wis. Stat. § 908.01(4)(a), (b).

11

No reasonable juror would believe that Thomas—an allegedly innocent man—confessed to save his brother and that Deyontae told Thomas all the details of the robberies and the shooting. At the time he confessed, Thomas knew that the store clerk had died and that he faced serious time if convicted of the shooting. *See* ECF No. 28-3 at 77–78. Indeed, based on the deal he reached with the State, Thomas knew he likely would spend around forty years in prison, which Thomas described as basically a life sentence. *See id.* at 81–82. The affidavits do not convincingly explain why Thomas would agree to spend the rest of his life in prison for crimes he didn't commit. Moreover, the testimony Thomas gave at Malone's trial was so detailed that it's likely only the true suspect would have known it. That testimony also appears to have been consistent with other evidence introduced at Malone's trial, including Cotton's testimony. *See generally* ECF No. 28-3; *see also Malone*, 2018 Wisc. App. LEXIS 789, at *1–18. Thus, if Thomas were actually innocent, then both Malone and Cotton would have been in on the bait-and-switch too. But the affidavits do not allege as much, and we have not heard from Malone or Cotton since Malone's trial.

*Second*, the timing of Thomas' actual-innocence claim cuts against the reliability of the affidavits. The Supreme Court has explained that reviewing courts "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence" when assessing new evidence presented in support of an actual-innocence claim. *Schlup*, 513 U.S. at 332. The robberies and the shooting occurred in January 2015, Malone was tried in February 2016, Thomas pled guilty in February 2016, and Thomas was sentenced in May 2016. Deyontae first submitted his affidavits in May 2018—that is, after briefing closed on Thomas' direct appeal and after Deyontae was sentenced to a lengthy prison term for an armed robbery and shooting he committed in August 2015. The other affidavits

apparently did not materialize until 2020. This sequence of events suggests that Thomas and the others waited until after they had a convenient scapegoat in Deyontae to come forward with their affidavits. A reasonable juror would question the reliability of those submissions.

*Third*, each person who submitted an affidavit has a clear motive to lie: to get Thomas out of prison. Deyontae is serving a lengthy prison sentence anyway, so why not pin the blame on him and try to exonerate Thomas? Again, the affidavits would be much more convincing if they had come from an unbiased source like Malone or Cotton.

In sum, the affidavits claiming that Deyontae committed the robberies and the shooting, not Thomas, are unreliable given Thomas' prior admissions, the fact they did not materialize until after Deyontae was sentenced to prison for different crimes, and the affiants' close relationship with Thomas.

## B. DNA evidence

Thomas' alleged DNA evidence also does not constitute reliable evidence of his innocence. Thomas claims that DNA evidence from the clothing, the green mask, and the firearm used during the robberies and the shooting excluded him but inculpated his brother Lavontae. While it appears those items were subjected to DNA testing—Thomas' appellate lawyer asserted in the motion to remand that he received a DNA evidence report that could potentially be exculpatory, *see* ECF No. 24-2 at 5–6—Thomas has not produced a copy of the report or any other evidence corroborating its contents aside from his own unsupported allegation. Even if he had, the DNA evidence would be immaterial because Thomas' admission at Malone's trial that he was the shooter debunks any exculpatory value in the fact that Thomas' DNA apparently was not found on the gun. Thomas' theory—that his DNA would be on the gun if he was in fact the shooter—also is inconsistent with his claim that

13

Deyontae committed the crimes, as Deyontae's DNA was not on the gun either, only Lavontae's was. Besides, Thomas testified at Malone's trial that he wore gloves during the robberies and the shooting, so the lack of DNA evidence pointing to him would have been unsurprising. Thomas' alleged DNA evidence therefore is not exculpatory.

### C. Video evidence

In her affidavit, Gasper asserts that sometime in April 2018 she came across several old videos on her phone that showed Thomas was with her and her sister the night of the January 13, 2015 robbery and shooting. Gasper asserts that, when she informed Thomas' appellate lawyer about the videos, he told her not to talk about or share them with anyone else and that he would set up a meeting for her to hand over her phone to a private investigator. Gasper says she told the lawyer that she couldn't meet up because she was leaving town, but she could FedEx the phone to him. According to Gasper, the lawyer gave her his address, and she sent him the phone the following week. *See* ECF No. 2-1 at 4.

This alleged video evidence does not move the needle of Thomas' actual-innocence claim. For one, the videos (assuming they exist and depict what Gasper claims they do) would not absolve Thomas from the robbery on January 10, 2015. Moreover, Gasper's story about the alleged video evidence is simply unbelievable. Gasper claims that she had evidence that would exonerate her one-time boyfriend,[2] but she had other plans and couldn't meet up with an investigator working for his defense. She doesn't explain why she was unable to meet the investigator before she left or after she returned from her previously scheduled trip. And she doesn't offer any evidence, like a receipt or tracking information, to support her claim that she mailed her phone to Thomas' appellate lawyer. Likewise, Gasper apparently never told

---

[2] It's unclear if Gasper and Thomas were still dating at the time Gasper discovered the videos.

Thomas that she was sitting on evidence that would support his claim of innocence; according to Thomas, he didn't learn about the videos until years later. Absent some corroboration, no reasonable juror would believe Gasper's story.

\* \* \*

Thomas has failed to meet the demanding standard for actual innocence. His "new" evidence is unreliable, and Thomas has not demonstrated that it is more likely than not that no reasonable juror would have found him guilty if the evidence were presented at trial. This is especially true in light of the fact that Thomas confessed to the police and gave a detailed account of the robberies and the shooting during his co-actor's trial. Because Thomas does not present evidence sufficient to pass through the actual-innocence gateway, I am precluded from reaching the merits of his defaulted ineffective-assistance-of-counsel and due-process claims.[3]

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Where a district court denies a habeas petition on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Here, no reasonable jurist would find it debatable whether

---

[3] Given the facial unreliability of his proffered evidence and the fact that he voluntarily abandoned the state actions in which he was pursuing his constitutional claims, Thomas is not entitled to an evidentiary hearing under 28 U.S.C. § 2254(e)(2) to further develop his federal habeas claims.

Thomas procedurally defaulted his two federal habeas claims and made a strong showing of actual innocence. I will therefore deny a certificate of appealability.

## CONCLUSION

For the reasons given above, the court **GRANTS** the respondent's motion to dismiss, ECF No. 17; **DENIES** the petitioner's motions, ECF Nos. 8, 9, 13, 16, 23, 27, 29, 32; **DENIES** the petition, ECF No. 1; and **DISMISSES** this action. The court also **DENIES** a certificate of appealability. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 1st day of February, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge

16